**24 HOUR FITNESS USA, INC., Plaintiff,**

**v.**

**24/7 TRIBECA FITNESS, LLC, Peter Williams Enterprises, Inc., Peter Williams, and Does 1–10, Defendants.**

**No. 03 CIV. 4069 LTSRLE.**

United States District Court, S.D. New York.

Aug. 18, 2003.

Matt, Phelps & Philips, LLP by Ronald G. Blum, Esq., New York City, for Plaintiff.

Goldberg, Weprin & Ustin LLP by Matthew Hearle, Esq., New York City, for Defendants.

## MEMORANDUM OPINION
## AND ORDER

SWAIN, District Judge.

Plaintiff 24 Hour Fitness USA., Inc. ("Plaintiff" or "24 Hour Fitness") seeks a preliminary injunction against defendants 24/7 Tribeca Fitness, LLC ("24/7 Fitness"), Peter Williams Enterprise, Inc. and Peter Williams (collectively, "Defendants") prohibiting their use of a "24/7 Fitness" mark and the use of the domain name "247fitnessclub.com." Plaintiff alleges that Defendants willfully infringed 24 Hour Fitness' federally registered trademarks and service marks. Plaintiff's complaint asserts claims for trademark infringement, unfair competition, false advertising, dilution and cybersquatting pursuant to 15 U.S.C. sections 1114, 1125(a), and 1125(c), the Federal Anti–Cybersquatting Consumer Protection Act (ACPA), 15 U.S.C. section 1125(d), New York General Business Laws sections 113, 350 and 360, and New York common law. The Court has jurisdiction of this case pursuant to 28 U.S.C. section 1338(a) and (b).

Plaintiff seeks a preliminary injunction in respect of its federal trademark infringement and cybersquatting claims.[1] The Court has considered thoroughly all of the parties' submissions and arguments in connection with the instant motion. This Memorandum Opinion and Order constitutes the Court's findings of fact and conclusions of law for purposes of Rules 52 and 65 of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiff's motion for a preliminary injunction is denied.

## BACKGROUND

The following facts are undisputed, unless otherwise indicated. Plaintiff 24 Hour Fitness, a California corporation, is a premier chain of health and fitness clubs. 24 Hour Fitness currently operates approximately 300 clubs located throughout the United States. Bakos Dec. ¶ 2. Plaintiff owns and operates numerous facilities in the West Coast and Midwest areas of the United States but does not currently operate any facilities in the New York metropolitan area. Bakos Dec. ¶ 3. 24 Hour Fitness also markets and sells a wide range of merchandise under its "24 Hour Fitness" mark. Bakos Dec. ¶ 3. 24 Hour Fitness has used its 24 Hour Fitness mark since about 1996. The United States Patent and Trademark Office has issued 24 Hour Fitness some 16 registrations covering trademarks and service marks for the words "24 Hour Fitness" in connection with health club and/or other health-related goods and services, with and without a stylized logo incorporating the words "24 Hour." Bakos Dec. Ex. A; Bakos Dec. ¶ 7. Plaintiff's registered marks include a

1. The preliminary injunction motion was initiated by means of an Order to Show Cause, executed by the Court June 5, 2003. That Order invoked Plaintiff's federal dilution and state law claims as grounds for the relief sought as well. Because, however, Plaintiff's memoranda of law in support of the instant motion argued only the federal trademark infringement and cybersquatting claims, the Court construes the motion as premised on those claims only. *See, e.g.,* Reply Mem. in Supp. of Pl.'s Mot. for Prelim. Inj. at 1, n. 1.

trademark for the words "24 Hour Fitness" in connection with health club services. That registration disclaims any claim to the exclusive right to use the word "fitness" apart from the mark. Bakos Dec. Ex. A; Bakos Dec. ¶ 7. 24 Hour Fitness has expended substantial efforts and millions of dollars in promoting and advertising the 24 Hour Fitness mark in newspapers, billboards and magazines, at sporting events, and on television and the Internet. Bakos Dec. ¶¶ 5–6. Since 1996, 24 Hour Fitness has also maintained a website, which is located at www.24hourfitness.com. Bakos Dec. ¶ 12. Plaintiff has partnered with Magic Johnson to open a series of 24 Hour Fitness Magic Johnson Clubs. One such facility may be opened in New York City in the future. Bakos Dec. ¶¶ 9, 18.

Since April 2001, defendant 24/7 Fitness has owned and/or operated three small physical fitness/health clubs in lower Manhattan. Williams Dec. ¶ 3. Plaintiff's facilities are from three to ten times the size of those provided by 24/7 Fitness. Williams Dec. ¶ 4. 24/7 Fitness' annual membership is $300—compared to the more than $1,000 fee normally charged by facilities like 24 Hour Fitness. Williams Dec. ¶ 5. Defendants also operated a website located at www.247fitnessclub.com. Franco Dec. ¶ 8. A number of links on Defendants' site connected to pornographic websites. Franco Dec. ¶ 11. Defendants have taken down the 247fitnessclub.com website. Williams Dec. ¶ 14; Transcript of June 23, 2003 oral argument at 5.

In July 2002, defendant Williams received a cease-and-desist letter from Plaintiff's counsel asserting that 24/7 Fitness was infringing on Plaintiff's marks. Williams Dec. ¶ 8. Defendant Williams asserts that he had never heard of plaintiff 24 Hour Fitness prior to receiving the July 2002 cease-and-desist letter. Williams Dec. ¶ 8. On August 2, 2002, 24 Hour

Fitness sent a follow-up letter to Defendants. Franco Dec. ¶ 5. On or about August 9, 2002, defendant Williams contacted Plaintiff's counsel, identifying himself as an owner of the 24/7 Fitness clubs and asserting that the 24/7 Fitness mark did not infringe on Plaintiff's 24 Hour Fitness mark. Franco Dec. ¶ 5. In that phone call, defendant Williams stated that he was aware of at least one instance in which a person had telephoned 24/7 Fitness regarding 24 Hour Fitness. Franco Dec. ¶ 5. In addition, 24 Hour Fitness has proffered evidence of a posting on an internet bulletin board in which a person seeking information regarding 24/7 Fitness states that 24/7 Fitness is "NOT affiliated with 24 Hour Fitness." Ex. J to Compl.

In litigation not involving Defendants, a federal district court in Louisiana has issued a Judgment and Order for Permanent Injunction by Consent enjoining the defendants in that action from using the mark "24 Hour Fitness." A federal district court in Michigan has entered a Consent Judgment and Permanent Injunction prohibiting a Michigan entity and related individuals from using the marks "24 Hour Fitness" and "24/7 Fitness." Ex. C to Complaint.

## DISCUSSION

In this Circuit, a grant of preliminary injunctive relief is generally appropriate only upon the movant's showing:

(a) that it will suffer irreparable harm in the absence of an injunction and (b) either (i) a likelihood of success on the merits or (ii) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor.

*Tom Doherty Assoc. v. Saban Entertainment, Inc.,* 60 F.3d 27, 33 (2d Cir.1995) and cases cited therein. A movant must

demonstrate that irreparable harm will be suffered in the absence of such an injunction. *See id.* at 37–39. Where, however, the relief sought by the movant will alter the status quo or will provide "substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits," a higher standard applies. *Id.* at 34. Under this standard, an injunction should issue "only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Id.* (citation omitted). "The 'clear' or 'substantial' showing requirement ... alters the traditional formula by requiring that the movant demonstrate a greater likelihood of success." *Id.* A movant in such circumstances must also demonstrate that irreparable harm will be suffered in the absence of such an injunction. *See id.* at 37–39.

■ Here, the higher standard applies because movant seeks to alter the status quo by halting Defendants' already-established use of "24/7 Fitness" as the name of their business, and by precluding Defendants' use of the internet domain name www.247fitnessclub.com.

*Trademark Infringement—Lanham Act*

■ To prevail on a claim of trademark infringement under the Lanham Act, 15 U.S.C. sections 1114, 1125, a plaintiff must show that it owns a valid trademark that is entitled to protection, defendant's unauthorized use of the mark or a colorable imitation of the same in commerce in connection with the sale or distribution of goods or services, and the likelihood of confusion arising from such use. *Gruner + Jahr USA Publishing v. Meredith Corp.*, 991 F.2d 1072, 1075 (2d Cir.1993); *New York Stock Exchange, Inc. v. New York, New York Hotel*, LLC, 293 F.3d 550, 554 (2d Cir.2002).

■ Here, Plaintiff's registration of the relevant mark has been in place for more than five years; its entitlement to protection is therefore incontestible; it is deemed to be strong and to have developed secondary meaning for purposes of the protectability prong of the analysis. *Gruner + Jahr*, 991 F.2d at 1077. Accordingly, the pivotal issue on this motion is whether there is a likelihood of confusion between the two marks.

■ Courts in this Circuit determine likelihood of confusion using the nonexclusive list of factors identified by the United States Court of Appeals for the Second Circuit in *Polaroid Corp. v. Polarad Elec. Corp.*, 287 F.2d 492, 495 (2d Cir.1961). These *Polaroid* factors are as follows:

1) strength of the mark;
2) degree of similarity between the marks;
3) proximity of the products;
4) likelihood that the owner of the mark will bridge the gap;
5) actual confusion;
6) defendant's good faith in adopting the mark;
7) quality of defendant's product; and
8) sophistication of the buyers.

*Id.* "[These] factors are designed to help grapple with the 'vexing' problem of resolving the likelihood of confusion issue .... Therefore, each factor must be evaluated in the context of how it bears on the ultimate question of likelihood of confusion as to the source of the product." *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 872 (2d Cir.1986). The pertinent inquiry is not the possibility of confusion but, rather, the *probability* of confusion—specifically, whether "numerous ordinary prudent purchasers are likely to be misled or confused as to the source of the product in question because of the entrance in the marketplace of defendant's mark." *Gruner + Jahr*, 991 F.2d at 1077;

*Estee Lauder Inc. v. The Gap, Inc.,* 108 F.3d 1503, 1511 (2d Cir.1997).

### Strength of Plaintiff's "24 Hour Fitness" Mark

 The strength of a mark is "measured by its distinctiveness or the degree to which it indicates the source or origin of the product . . . [, and should be] examined in its commercial context." *Bristol–Myers Squibb Co. v. McNeil–P.P.C., Inc.,* 973 F.2d 1033 (2d Cir.1992). In trademark infringement actions, courts must evaluate plaintiff's trademark as a whole, not dissect it into individual words that might, taken alone, be common or generic. *See Simon & Schuster, Inc. v. Dove Audio,* 936 F.Supp. 156, 162 (S.D.N.Y.1996). "[T]he strength of a mark depends on its distinctiveness, or its 'origin indicating' quality, in the eyes of the purchasing public." *Diner, Inc. v. Dream Kitchen, Inc.,* No. 95 Civ. 4130, 1995 WL 438627, at *4 (S.D.N.Y. 1995) (citation omitted). Second Circuit courts evaluate the strength, or inherent distinctiveness, of trademarks according to the test articulated in *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 9 (2d Cir.1976). Under this test, "marks are classified as . . . (1) generic; (2) descriptive; (3) suggestive; or (4) arbitrary and fanciful." *Paddington Corp. v. Attiki Imp. & Distrib.,* 996 F.2d 577, 583 (2d Cir.1993). "[I]n classifying a trademark according to the *Abercrombie* test, a court examines the context in which the words constituting the mark are used." *Id.* (citations omitted).

 There is no contention here that Plaintiff's mark is generic (entitled to the least protection) or arbitrary and fanciful (having the highest level of inherent distinctiveness). In determining where on the *Abercrombie* scale Plaintiff's mark lies, the Court will accordingly consider whether the mark is descriptive or suggestive.

A descriptive mark " 'tells something about a product, its qualities, ingredients or characteristics,' " while "[a] suggestive mark is one that 'suggests the product, though it may take imagination to grasp the nature of the product.' " *Estee Lauder Inc. v. The Gap, Inc.,* 108 F.3d 1503, 1509 (2d Cir.1997) (citation omitted). If the mark is suggestive, it is inherently distinctive. *Paddington Corp.,* 996 F.2d at 583; *Stix Prods., Inc. v. United Merchants & Mfrs., Inc.,* 295 F.Supp. 479, 488 (S.D.N.Y. 1968). A descriptive mark may be protected only if it has acquired secondary meaning; a suggestive mark, on the other hand, is protected without a showing of secondary meaning. *Estee Lauder,* 108 F.3d at 1509. As noted above, Plaintiff's mark is incontestably protectable by virtue of its longstanding registration, the demonstration of secondary meaning that is ordinarily requisite to protection of a descriptive mark therefore is not required. Whether Plaintiff's trademark is descriptive and therefore weak or, on the other hand, suggestive and therefore inherently distinctive and strong remains, however, a factor properly examined in the likelihood of confusion prong of the trademark infringement analysis. *Gruner + Jahr,* 991 F.2d at 1077–1078.

 Here, although Plaintiff's mark is "entitled to a presumption (albeit a rebuttable one) of distinctiveness" by virtue of its registration, *Diner, Inc.,* 1995 WL 438627, at *4 (citation omitted), the Court finds that the term "24 Hour Fitness" is plainly descriptive in nature when employed, as here, in the health club context. Plaintiff's disclaimer in its registrations of exclusive rights to the word "fitness" other than as a component of the mark is telling—"fitness" is a word widely used in current parlance to denote gymnasia, physical training, exercise programs and similar goods and services.[2] "24 Hour,"

**2.** Indeed, the Court's August 5, 2003 *www.google.com* search for the term "fitness

the other component of the mark, refers to a time frame and is ubiquitous in its use in connection with businesses that have long opening hours. Taken together, the components, in the current context, most clearly describe a physical training-related entity that is available, if not around the clock, at least for substantial periods of time on a regular basis. Arguably, the use of "24 Hour"could alternatively be deemed suggestive of a health-related service that keeps one fit at all times. This suggestive meaning is still weak, as it is dependent on incorporation in the trademark of the descriptive (arguably even generic) term "fitness." Accordingly, the mark is not inherently distinctive. Furthermore, although Plaintiff has proffered evidence of its extensive use of the mark in advertising and on related products and asserted in an affidavit proffered by one its principals that the mark has achieved secondary meaning, the evidence that the mark 24 Hour Fitness has achieved secondary meaning in the minds of consumers to a significant degree as identifying Plaintiff as the particular source of goods and services offered under that rubric is far from compelling.[3]

*Degree of Similarity and Proximity Between the Two Marks*

"It is appropriate to consider together the second and third *Polaroid* factors." *Hasbro Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 76 (2d Cir.1988). "The comparison of the marks is an inquiry designed to determine the 'general impression conveyed to the purchasing public by the respective marks.'" *Id.* at 77 (citation omitted). The third factor considers whether, based upon commercial proximity of competitive products, consumers may be confused as to the products' source. Such confusion occurs if consumers mistakenly assume one product is associated with the manufacturer of the other. In considering the similarity, the focus is on the dominant part of the mark—that which makes the greatest impression on the consumer. *Diner, Inc.*, 1995 WL 438627, at *4. As to the question of physical proximity, "the geographic issue is not one that can be resolved based merely on distance." *Id.* 1995 WL 438627 at *5.

The marks here at issue are substantially similar but are not identical. The two elements of the marks that are identical—the number "24" and the term "fitness" are not, as explained above, inherently distinctive ones. Defendant's mark alters the first term to incorporate a reference to the seven-day week, *viz*, "24/7" and drops the term "hour" from the mark. There is no issue as to mimicry of any of Plaintiff's stylized logos. For these reasons, the similarity of the marks is not a strong factor in favor of a finding of likelihood of confusion as to source although they clearly connote goods or services of the same nature.

As to proximity, the two entities' services clearly fall into the same physical training area of commerce. The respective sizes and geographical distribution of

---

industry" on the Internet revealed over 1.6 million hits, principally identifying sites relating to physical training and conditioning.

3. Plaintiff cites prominently as evidence of secondary meaning the Illinois and Michigan consent judgments and injunctions described above at page 4. Although those orders purport to incorporate "findings" of secondary meaning, their texts indicate clearly that they were stipulated by the respective parties to those actions; at oral argument on the instant preliminary injunction application, Plaintiff's counsel was not even able to represent that any evidence had been presented to the district court in either of those actions. Defendant 24/7 Fitness was not a party to either of those actions. This Court finds no appropriate basis for deferring to the findings incorporated in those consent orders in making its determinations here.

facilities are currently quite distinct, although the Court notes that Plaintiff represents that it intends in the future to open East Coast facilities in partnership with the celebrity Magic Johnson (albeit under the more distinctive name "24 Hour Fitness Magic Johnson Sports Clubs" [4]). The evidence of record indicates that health club consumers are conscious, in choosing facilities, of the nature and extent of services offered at particular facilities. Thus, it is likely that a consumer of ordinary prudence knowing of 24 Hour Fitness' business model and reputation would notice that 24/7 Fitness' facilities are more limited, both geographically and in terms of the amenities offered at particular clubs. This factor thus does not weigh strongly in favor of a finding that numerous consumers of ordinary prudence would probably be confused as to the source of defendant 24/7 Fitness's services.

### Bridging the Gap

The fourth Polaroid factor focuses on whether the senior user of the mark will bridge the gap by entering the market in which the junior user operates. Consideration of this factor takes into account the principle that a trademark "protects the owner against not only its use upon the articles to which he has applied it, but upon such other goods as might naturally be supposed to come from him." *L.E. Waterman Co. v. Gordon,* 72 F.2d 272, 273 (2d Cir.1934). Further, this factor is important in evaluating the likelihood of confusion because it encompasses both the situation in which the senior user may be considering expanding his sales in competition with the junior user and the situation in which no such expansion is contemplated, but in which consumers nevertheless assume a relationship between the parties.

As noted above, Plaintiff does not currently operate facilities in New York City, but represents that it expects to open "24 Hour Fitness Magic Johnson Sports Clubs" on the East Coast in the foreseeable future. For the reasons examined in the preceding discussions of proximity and similarity, and because Plaintiff proposes to use a far more distinctive name than the "24 Hour Fitness" mark at issue here for the possible New York City and/or East Coast clubs, the Court finds that the likelihood that the geographic "gap" will be bridged does not weigh strongly in favor of a finding of likely confusion.

### Actual Confusion

This *Polaroid* factor addresses evidence that consumers have actually been confused. Although such evidence is not required to show likelihood of confusion, the inability to show actual confusion may weigh against a plaintiff. *Hasbro,* 858 F.2d at 78.

Plaintiff has not come forward with any survey or other empirical evidence of actual confusion. Plaintiff cites, however, incidents that it characterizes as indicative of actual confusion. Plaintiff asserts, and Defendants do not dispute, that defendant Williams admitted that one of his 24/7 Fitness clubs had received a telephone call from a customer inquiring about 24 Hour Fitness. Franco Dec. ¶ 5; Defs Mem. in Opp'n at 11. Plaintiff also cites a 2002 internet bulletin board posting seeking information regarding 24/7 Fitness and stating that 24/7 Fitness is "NOT affiliated with 24 Hour Fitness" as indicating actual confusion or as "attempting to clarify whether 24/7 Fitness and 24 Hour Fitness are affiliated." (Pl's Mem. in Supp. at 12; Bakos Dec. ¶ 15; *see* Ex. D.) Even queries into a possible relationship between entities do not constitute evidence of actual confusion. At best, these two items of evidence are indicative of possible, but not

---

**4.** Bakos Reply Dec. ¶¶ 9, 28.

probable, confusion. *See Gruner + Jahr,* 991 F.2d at 1079. There being no other evidence on the issue of actual confusion, this factor does not weigh in favor of a finding of likelihood of confusion as to the source of Defendants' goods and services.

*Defendant's Good Faith in Adopting the Mark*

Defendant Williams denies that Defendants had ever heard of Plaintiff prior to the receipt of Plaintiff's cease-and-desist letter in July 2002 (Williams Dec. ¶ 8), and there is no evidence to the contrary. Plaintiff asserts, however, that Defendants' registration of the www.247fitnessclub.com internet domain name and introduction of their website after Plaintiff's initial communications with Defendant Williams, and after settlement negotiations, is indicative of bad faith. "Bad faith," in the relevant Lanham Act sense, is "deceiving customers into believing that [an entity's] products or services [are] related to" those of the senior user. *New York Stock Exchange, Inc.,* 293 F.3d at 556 n. 1.

There is no evidence of record indicating that Defendants acted in bad faith in any relevant sense in adopting and utilizing the domain name in question.

*The Quality of Defendants' Product*

"Generally, quality is weighed as a factor when there is an allegation that a low quality product is taking unfair advantage of the public good will earned by a well-established high quality product." *Gruner + Jahr,* 991 F.2d at 1079. Although Defendants' facilities are smaller and the services are less expensive than Plaintiff's, there is no showing that Defendants offer an inferior health club product. Plaintiff's principal complaint in this regard relates to the pornography site links that were featured on Defendants' www.247fitnessclub.com website. Plaintiff's concern here seems to be less that Defendants were seeking to take advantage of the appearance of a connection with Plaintiffs than that a consumer looking for health club information and confused as to the sponsorship of the website could have developed an unfavorable opinion of Plaintiff's services upon encountering the links. This factor does not weigh heavily in favor of a finding of likelihood of relevant confusion.

*The Sophistication of the Buyer*

The last consideration enumerated by the Second Circuit in *Polaroid* is the sophistication of the buyer. In assessing buyer sophistication, a court must consider the "general impression of the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods." *Merriam–Webster, Inc. v. Random House, Inc.,* 35 F.3d 65, 72 (2d Cir.1994) (quoting *McGregor–Doniger, Inc. v. Drizzle, Inc.,* 599 F.2d 1126, 1137 (2d Cir.1979)).

Consumers of fitness clubs use club premises personally, and thus are likely to familiarize themselves with the specific amenities offered by competing club proprietors. The evidence presented in connection with the instant motion indicates that New York is among the more competitive fitness club markets, with a fairly sophisticated consumer base. In this milieu, the Court finds it unlikely that significant number of ordinarily prudent fitness club consumers would confuse Defendants' clubs with 24 Hour Fitness facilities (much less with a 24 Hour Fitness Magic Johnson Sports Club facility) on the basis of the overlapping use of the terms "24" and "Fitness" in the respective trademarks or club names.

Plaintiff argues, however, that the probability of confusion of a somewhat different group of consumers—those searching the internet for health-related information on Plaintiff's website—is also relevant. Although Plaintiff concedes that no one is

likely to type "www.247fitnessclub.com" into a browser's address line when the website they are seeking is "www.24hour-fitness.com," Plaintiff seeks to prohibit Defendant's use of the internet website designation www.247fitnessclub.com and the related domain name because, Plaintiff contends, internet users employing search engines to find Plaintiff's website will be presented with a choice of links that will include Defendants'. From the search results, consumers picking Defendants' site instead of Plaintiff's site would have encountered the pornography links on Defendants' site. Plaintiff contends that the likelihood of confusion among this presumably less sophisticated group of consumers, and the possible detrimental effect on their view of Plaintiff's products and services if they encounter pornography on a website they mistake for Plaintiff's, weighs in favor of a finding of a likelihood of success on the infringement claim.

The Court's August 5, 2003 search through the *www.google.com* engine for the terms "24" "Hour" and "Fitness" produced a list of over one million hits, of which Plaintiff's site was the second. The results include links to a site purporting to offering a discussion board of bodybuilding experts and "fitness babes" as well as a www.24hourteamsports.com site offering high school programs. Indeed, a number of sites purport to offer reviews of health clubs, including those maintained by Plaintiff; it is entirely possible that any number of those sites maintains links of which Plaintiff or its prospective customers might not approve.

This simple exercise, with the application of simple logic, makes it apparent that any confusion or misdirection of a person using a general internet search engine to find Plaintiff's site would arise principally from the fact that Plaintiff has chosen to construct its mark out of common descriptive terms rather than inherently distinc-tive terms. The risk of confusion on this account is not as to Plaintiff's identity as the particular source of anyone's health club or fitness product.

The *Polaroid* factors are to be weighed holistically in determining whether the party seeking to establish an infringement claim has demonstrated the probability of confusion of a substantial number of consumers of the relevant class. The Court has considered carefully the factors here and finds that Plaintiff has fallen far short of carrying its burden of demonstrating a clear or strong likelihood of success on the merits of its trademark infringement claim against Defendants. Indeed, Plaintiff has failed even to make the ordinary showing of likelihood of success that would be required were it seeking only to maintain the status quo. Plaintiff's mark is not inherently distinctive. It is, in fact, weak. Defendant has not adopted Plaintiff's "24 Hour" formulation in its mark or its website designation and has not adopted Plaintiff's logos. The evidence, and analysis of the relevant factors, is not indicative on the whole of a probability of relevant consumer confusion as to whether Plaintiff is the source or a sponsor of Defendant's health club services or website.

*Anti–Cybersquatting Act Claim*

■ Plaintiff argues that Defendants have violated the Anti–Cybersquatting Consumer Protection Act, 15 U.S.C. section 1125(d), ("ACPA"). The ACPA provides in pertinent part that a person is liable to the owner of a mark if the person (i) has a bad faith intent to profit from the mark and (ii) registers, traffics in, or uses a domain name that (in the case of a mark that is either distinctive or famous at the time the defendant's domain name is registered) is identical or confusingly similar to or dilutive of that mark. 15 U.S.C.A. § 1125(d)(1)(A) (West 1998 & Supp.2003). For substantially the same reasons set

forth above in connection with the Court's analysis of Plaintiff's federal trademark claims, the Court finds that Plaintiff has failed to demonstrate a likelihood of success on its ACPA claim.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for a preliminary injunction is denied. The parties have agreed to conduct all future proceedings in this case before Magistrate Judge Ellis. They are directed to contact Judge Ellis' chambers promptly.

SO ORDERED.