24 Hour Fitness v. Vision Fitness     CV-04-257-SM  11/18/04
                 UNITED STATES DISTRICT COURT

                   DISTRICT OF NEW HAMPSHIRE


24 Hour Fitness USA, Inc.,
     Plaintiff

     v.                                    Civil No. 04-257-SM
                                           Opinion No. 2004 DNH 165
Craig Annis and CJA Corp.,
d/b/a Vision Fitness,
     Defendants


                        **O R D E R**


     24 Hour Fitness USA, Inc. brings this action seeking damages

and injunctive relief for what it claims was defendants' willful

infringement of its federally registered trademarks and service

marks.  In its seven-count complaint, 24 Hour Fitness sets forth

three federal claims and four state common law and statutory

claims.  Defendants, Craig Annis and CJA Corporation d/b/a Vision

Fitness, deny any wrongdoing and advance two counterclaims.

First, they allege that 24 Hour Fitness has engaged in anti-

competitive behavior, in violation of Section 2 of the Sherman

Act, 15 U.S.C. § 2.  Defendants also petition the court to cancel

plaintiff's trademark registrations.

24 Hour Fitness moves to dismiss count one of defendants' counterclaims, saying it fails to set forth the essential elements of a viable cause of action. See generally Fed. R. Civ. P. 12(b)(6). Defendants have not moved to amend their counterclaim, but they do object to 24 Hour Fitness's motion.

**Standard of Review**

When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must "accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor and determine whether the complaint, so read, sets forth facts sufficient to justify recovery on any cognizable theory." Martin v. Applied Cellular Tech., Inc., 284 F.3d 1, 6 (1st Cir. 2002). Dismissal is appropriate only if "it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory." Langadinos v. American Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000). See also Gorski v. N.H. Dep't of Corr., 290 F.3d 466, 472 (1st Cir. 2002) ("The issue presently before us, however, is not what the plaintiff is required ultimately to prove in order to prevail on her claim, but rather what she is required to plead in

2

order to be permitted to develop her case for eventual adjudication on the merits.") (emphasis in original).

Notwithstanding this deferential standard of review, however, the court need not accept as true a plaintiff's "bald assertions" or conclusions of law. See Resolution Trust Corp. v. Driscoll, 985 F.2d 44, 48 (1st Cir. 1993) ("Factual allegations in a complaint are assumed to be true when a court is passing upon a motion to dismiss, but this tolerance does not extend to legal conclusions or to 'bald assertions.'") (citations omitted). See also Chongris v. Board of Appeals, 811 F.2d 36, 37 (1st Cir. 1987).

## Background

24 Hour Fitness operates approximately 300 health and fitness clubs in the United States, with current membership of approximately 3 million people. And, since 1996, it has operated a Web site - www.24hourfitness.com - which it says receives an average of 2 million hits and over 4 million page views daily. Complaint at para. 14.

Beginning in 1998, 24 Hour Fitness sought, and received from the United States Patent and Trademark Office, certificates of registration for several marks, including "24 Hour Fitness," "24 Hour Fitness Sport," "24 Hour Team Sports," and "24 Hour Equipment." Because it has been in use for more than five years, the mark "24 Hour Fitness" (Registration number 2,130,895; registration date of January 20, 1998) is "incontestable" with respect to health club services in Class 41. See 15 U.S.C. § 1065. See also 15 U.S.C. § 1115(b). In defense of its marks, 24 Hour Fitness has engaged in several suits aimed at stopping allegedly infringing use of similar marks. See, e.g., 24 Hour Fitness USA, Inc. v. 24/7 Tribeca Fitness, LLC, 277 F. Supp. 2d 356, 360 (S.D.N.Y. 2003) (discussing some of plaintiff's litigation history and describing at least two suits that were settled by means of consent judgments and permanent injunctions).

Defendants operate two fitness clubs in New Hampshire and one in Maine under the mark "Vision Fitness." Defendants' fitness centers are available to members 24 hours a day. They also operate a Web site - www.visionfitnesscenter.com - on which they described their services as "24 Hour Fitness Centers."

4

Seemingly in response to plaintiff's letters advising defendants of their alleged infringement of the "24 Hour Fitness" marks, defendants modified their Web site by abbreviating the word "hour." Accordingly, as of this date, defendants' Web site states that Vision Fitness provides its members with "24 Hr. Fitness Centers." Plaintiff claims that defendants' use of the "24 Hr. Fitness Centers" and "24 Hour Fitness Centers" marks are colorable imitations of its own "24 Hour Fitness" mark. It also says that defendants' use of those marks is likely to cause confusion or mistake in the marketplace as to the source or origin of defendants' services and/or falsely suggest a sponsorship, connection, or association between defendants and 24 Hour Fitness.

Defendants, on the other hand, deny that they have infringed any of 24 Hour Fitness's marks. And, in their counterclaim, defendants assert that 24 Hour Fitness seeks "exclusive rights to use the term '24 Hour' in connection with fitness related services, which is in excess of any trademark rights granted to it by the USPTO and in violation of the antitrust laws of the United States." Answer and Counterclaim (document no. 4), at

5

para. 88. Defendants also allege that, "under the guise of 'vigorously policing' its trademark rights, the Plaintiff is attempting to use its substantial market power to monopolize and/or unreasonably restrain trade within the 24 hour fitness industry by preventing Defendants, and other potential competitors, from advertising their 24 hour fitness services to the public." Id. at para. 89. Such anti-competitive behavior, say defendants, violates section 2 of the Sherman Act.[1]

In support of its motion to dismiss count one of defendants' counterclaims, 24 Hour Fitness asserts that: (1) defendants have failed to allege the essential elements of a viable claim under Section 2 of the Sherman Act; and (2) defendants' counterclaim is

---

[1] Parenthetically, the court notes that, although this case is at a preliminary stage, there is scant support in the record (or the relevant publically available documents) for defendants' claim that 24 Hour Fitness is attempting to prevent its competition from advertising 24-hour availability. In this case, for example, 24 Hour Fitness does not claim that defendants' use of the phrase "available 24 hours" on their Web site in any way infringes its marks. Instead, it would seem, plaintiff is concerned with the manner in which defendants have chosen to inform the public that their facilities are open 24 hours a day (by allegedly using a mark that is deceptively similar to plaintiff's registered marks), rather than the mere fact that defendants seek to advertise that their facilities are always open.

barred as a matter of law by the Noerr-Pennington antitrust immunity doctrine.

## Discussion

In Eastern R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961), the Supreme Court held that "the Sherman Act does not prohibit . . . persons from associating together in an attempt to persuade the legislature or the executive to take particular action with respect to a law that would produce a restraint or a monopoly." Id. at 136. Accord, United Mine Workers v. Pennington, 381 U.S. 657, 669 (1965). The court concluded, however, that "sham" activities are not immune from liability under the Sherman Act, reasoning that antitrust liability is appropriate when petitioning activity "ostensibly directed toward influencing governmental action, is a mere sham to cover . . . an attempt to interfere directly with the business relationships of a competitor." Noerr, 365 U.S. at 144. Subsequently, the Court extended the Noerr antitrust immunity principle to cover "the approach of citizens . . . to administrative agencies . . . and to courts." California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 510 (1972).

7

More recently, the Court held that "litigation cannot be deprived of immunity as a sham unless the litigation is objectively baseless."  Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., 508 U.S. 49, 51 (1993).  The Court went on to explain that "an objectively reasonable effort to litigate cannot be sham regardless of subjective intent."  Id. at 57.

> Indeed, [in California Motor Transport] we recognized that recourse to agencies and courts should not be condemned as sham until a reviewing court has discerned and drawn the difficult line separating objectively reasonable claims from a pattern of baseless, repetitive claims which leads the factfinder to conclude that the administrative and judicial processes have been abused.

Id. at 58 (citations and internal punctuation omitted). See also Davric Maine Corp. v. Rancourt, 216 F.3d 143, 147-48 (1st Cir. 2000) ("[T]he Noerr-Pennington doctrine's 'sham' exception . . . exempts a party's resort to governmental process from antitrust immunity when such resort is objectively baseless and intended only to burden a rival with the governmental decision-making process itself. . . . [I]t only encompasses situations in which persons use the governmental process - as opposed to the outcome of that process - as an anticompetitive

weapon." ) (citations and internal punctuation omitted).
Consequently, a party is immune from antitrust liability for
conduct associated with pursuing legitimate claims in a judicial
forum, even if its victory on those claims would, in effect,
serve to restrain trade in some fashion.

In light of the governing law, the deficiencies in
defendants' counterclaim are apparent: although defendants allege
that 24 Hour Fitness has "initiated litigation to enjoin the use
of marks such as 24 HR GYM, 24/7 FITNESS, WALDEN'S 24 HOUR GYM &
FITNESS, 24 HOUR WORKOUT, and others," Answer and Counterclaim,
at para. 83, nowhere do defendants allege that such litigation
constitutes a pattern of baseless, repetitive claims that amounts
to an abuse of the judicial process.  In fact, at least two of
the cases referenced by defendants ended when 24 Hour Fitness
successfully secured consent judgments and permanent injunctions
against the parties it claimed were infringing its marks.  Such
outcomes do not support the conclusion that 24 Hour Fitness has
engaged in a pattern of baseless and abusive litigation; to the
contrary, they suggest that 24 hour Fitness's litigation had, at
least in those cases, some merit.

More importantly, however, defendants' counterclaim fails to allege any such pattern of objectively baseless litigation. Nor do defendants allege that this litigation is objectively baseless, or that 24 Hour Fitness filed it solely for the purpose of forcing defendants to incur the expense and inconvenience of going through the judicial process, without regard for the final outcome of the case or the merits of 24 Hour Fitness's claims.

Instead, defendants merely allege that, "[u]nder the guise of 'vigorously policing' its trademark rights, the Plaintiff is attempting to use its substantial market power to monopolize and/or unreasonably restrain trade within the 24 hour fitness industry by preventing the Defendants, and other potential competitors, from advertising their 24 hour fitness services to the public." In other words, defendants allege that 24 Hour Fitness is using (and has used) the judicial process with a subjective intent to suppress competition. Plainly, however, in light of unambiguous Supreme Court precedent, more is necessary to state a viable Sherman Act claim that avoids the Noerr-Pennington immunity principle. As the Columbia Pictures Court

10

made clear, "an objectively reasonable effort to litigate cannot be sham regardless of subjective intent." 508 U.S. at 57.

To state a viable antitrust claim that avoids <u>Noerr-Pennington</u> immunity, defendants must allege that 24 Hour Fitness has engaged in a pattern of baseless and abusive litigation. Count one of defendants' counterclaims fails to do so. And, at least in light of the published record of 24 Hour Fitness's litigation history, it is unclear whether plaintiffs could make such an allegation in good faith.

Alternatively, defendants might have asserted that 24 Hour Fitness initiated <u>this</u> litigation without regard to the merits of its claims, without regard to the final outcome of the case, and solely for the purpose of suppressing competition by forcing defendants to needlessly incur the costs and inconvenience associated with defending against claims which 24 Hour Fitness knows (or reasonably should know) are objectively baseless. Defendants' counterclaim lacks any such allegation(s).

## Conclusion

It is not enough for defendants to simply allege that 24 Hour Fitness has pursued a course of litigation that may have had the effect of suppressing competition or otherwise restraining trade.  Instead, to state a viable antitrust claim, and to avoid the Noerr-Pennington immunity principle, defendants must also allege that 24 Hour Fitness engaged in "sham" litigation - that is, objectively baseless litigation, pursued for a purpose other than achieving success on the merits of its stated claims. Defendants have failed to do so.

Count one of defendants' counterclaims fails to plead a viable cause of action under Section 2 of the Sherman Act, in that it fails to allege facts sufficient to overcome 24 Hour Fitness's entitlement to Noerr-Pennington antitrust immunity. Plaintiff's motion to dismiss count one of defendants' counterclaims (document no. 7) is granted.

**SO ORDERED.**

Steven J. McAuliffe
United States District Judge

November 18, 2004

cc:  Ronald S. Katz, Esq.
     Teresa C. Tucker, Esq.
     Christopher E. Ratte, Esq.

13