**GRUNER + JAHR USA PUBLISHING, A DIVISION OF GRUNER + JAHR PRINTING AND PUBLISHING CO., Plaintiff–Appellant,**

v.

**MEREDITH CORPORATION, Defendant–Appellee.**

**No. 667, Docket 92–7882.**

United States Court of Appeals, Second Circuit.

Argued Dec. 17, 1992.

Decided April 28, 1993.

**CARDAMONE, Circuit Judge:**

Before us on this appeal is a trademark infringement case. Review in this area of the law is similar to when those old-time radio comedians, Fibber McGee and Molly, opened their closet and out would pour a welter of miscellany from hub caps and baby carriages to broken umbrellas. The equivalent outpour in trademark law reveals complex statutory provisions, numerous factors that trial judges must consider and an appellate court review, definitions of the various kinds of marks, which overlap and shade into one another, and a jumble of adjectives describing the trademark review process.

Stripped to its essence—free from this assembled verbiage—the law makes clear that to succeed in a Lanham Act suit for trademark infringement, a plaintiff has two obstacles to overcome: the plaintiff must prove that its mark is entitled to protection and, even more important, that the defendant's use of its own mark will likely cause confusion with plaintiff's mark. The bottom line is if no such likelihood of confusion is found, a defendant will generally not be held to have infringed plaintiff's mark. Such is the fact here.

Plaintiff Gruner + Jahr USA Publishing appeals from a judgment entered on August 6, 1992 following a bench trial in the United States District Court for the Southern District of New York (Knapp, J.). 793 F.Supp. 1222. The judgment denied plaintiff injunctive relief and dismissed its complaint against the defendant Meredith Corporation for trademark infringement, trade dress infringement, and unfair competition.

David B. Wolf, New York City (Eric Stenshoel, Walter, Conston, Alexander & Green, P.C., of counsel), for plaintiff-appellant.

Robert M. Callagy, New York City (Jan Uhrbach, Satterlee Stephens Burke & Burke, of counsel), for defendant-appellee.

Before CARDAMONE, PIERCE and ALTIMARI, Circuit Judges.

### FACTS

Gruner + Jahr has published since 1926 the well-established PARENTS magazine that appears monthly at newsstands where it sells for $1.95. It is also available by subscription. In 1937 plaintiff registered its first mark, which is no longer in use, while the current PARENTS logo presently appearing on the magazine was granted trademark registration in 1979 and has since been used on other Gruner products, including toys and books.

The defendant Meredith publishes the nationally known magazine Ladies' Home Journal. In 1991 it began publishing a separate magazine devoted solely to parenting issues entitled Ladies' Home Journal PARENT'S DIGEST. PARENT'S DIGEST, produced four times a year, contains articles that have appeared previously in print elsewhere. It retails for $2.95 at newsstands. The first publication of PARENT'S DIGEST was in September 1991, and two subsequent issues have been released for sale so far.

Gruner and Jahr brought suit against Meredith in the Southern District on account of the latter's publication of PARENT'S DIGEST. Plaintiff alleged trademark infringement under 15 U.S.C. § 1114 (1988), and unfair competition and trade dress infringement from the use of a similar magazine title under 15 U.S.C. § 1125(a) (1988). The trademark infringement cause of action alleged that Meredith's use of the title PARENT'S DIGEST would likely cause confusion with its magazine, PARENTS. The unfair competition claim centered on Meredith's use of the heading "How They Grow" in the table of contents and above certain articles in PARENT'S DIGEST. Plaintiff believes the "How They Grow" captions created unfair competition with an "As They Grow" heading used for many years in PARENTS magazine. PARENT'S DIGEST included "How They Grow" in its first issue. It was dropped when defendant learned the "As They Grow" heading was a fixture in PARENTS magazine. It has not appeared since. The trade dress infringement cause of action alleged that PARENT'S DIGEST's use of a baby's face on its cover and its use of the "How They Grow" heading would likely cause confusion with PARENTS' similar trade dress.

A bench trial was held before Judge Knapp on April 20 and 21, 1992. The only issue tried was trademark infringement. The trial resulted in a finding for defendant Meredith that there was no likelihood of confusion between plaintiff's and defendant's marks, following Judge Knapp's application of the factors for determining whether trademark infringement has oc-

curred set forth by Judge Friendly in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir.), *cert. denied*, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961). This appeal followed. We affirm.

## DISCUSSION

### A. *Protectability of Mark*

Under § 1114 of the Lanham Act, plaintiff in a trademark infringement action must show that defendant (1) without consent, (2) used in commerce, (3) a reproduction, copy or colorable imitation of plaintiff's registered mark, as part of the sale or distribution of goods or services, and (4) that such a use is likely to cause confusion. *See* 15 U.S.C. § 1114(1)(a). The first two factors are not seriously disputed in the instant case. Defendant's publication of PARENT'S DIGEST, the alleged infringing product, was concededly published without plaintiff's consent and has been sold commercially. What plaintiff needs to demonstrate is that it has a valid mark entitled to protection and that defendant's use of it is likely to cause confusion.

■ We begin analysis with the first step—whether plaintiff's mark merits protection, before proceeding to the second step, the likelihood of confusion. The strength of a trademark in the marketplace and the degree of protection it is entitled to are categorized by the degree of the mark's distinctiveness in the following ascending order: generic, descriptive, suggestive, and arbitrary or fanciful. *See Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir.1976). A generic term is a common name, like automobile or aspirin, that describes a kind of product. *See Banff, Ltd. v. Federated Dep't Stores, Inc.*, 841 F.2d 486, 489 (2d Cir.1988). A common name, available to anyone, is never entitled to trademark protection. At the opposite end of the distinctiveness array is an arbitrary or a fanciful term. Such may always claim trademark protection, is never a common name for a product, and bears little or no relationship to the kind of product represented. An arbitrary term is one that has a dictionary meaning—though not

describing the product—like IVORY for soap. A fanciful mark is a name that is made-up to identify the trademark owner's product like EXXON for oil products and KODAK for photography products. *See* J. Thomas McCarthy, *Trademarks and Unfair Competition*, §§ 11:2, 11:3, 11:4A (2d ed. 1984) (McCarthy, *Trademarks* ).

■ The remaining categories defining a trademark's strength are suggestive and descriptive terms. The distinction between a descriptive and suggestive mark is that the former may be protected only if it has acquired secondary meaning, while a suggestive mark is protected without a showing of secondary meaning. A suggestive mark, as might be expected, suggests the product, though it may take imagination to grasp the nature of the product. An example is ORANGE CRUSH, an orange-flavored beverage. *See* McCarthy, *Trademarks*, § 11:20 n. 13. We are not dealing in this case with a generic, fanciful or suggestive mark.

■ This appeal concerns a descriptive mark. Such a mark is one that tells something about a product, its qualities, ingredients or characteristics. It may point to a product's intended purpose, its function or intended use, its size, or its merit. *See Centaur Communications, Ltd. v. A/S/M Communications, Inc.*, 830 F.2d 1217, 1220 (2d Cir.1987); McCarthy, *Trademarks*, § 11:5. A descriptive mark is entitled to protection upon proof that it has obtained a secondary meaning, that is to say, an identity that consumers associate with a single source, even though the source itself may be unknown. The reason for granting protection to a descriptive mark only upon its acquiring secondary meaning is because a descriptive mark by definition simply describes a product, it does not identify it like EXXON or ORANGE CRUSH identify the products they represent. But upon proof of secondary meaning, a product with a descriptive mark then has become identified—as well as being described—as originating from a single source.

Several cases finding a mark merely descriptive will help put the PARENTS mark in perspective. *See, e.g., William R. Warner & Co. v. Eli Lilly & Co.*, 265 U.S. 526, 44 S.Ct. 615, 68 L.Ed. 1161 (1924) (COCO-QUININE, chocolate flavored quinine); *Franklin Knitting Mills, Inc. v. Fashionit Sweater Mills, Inc.*, 297 F. 247 (D.C.N.Y. 1923), *aff'd*, 4 F.2d 1018 (2d Cir.1925) (FASHIONKNIT, sweaters); *Hiram Walker & Sons, Inc. v. Penn–Maryland Corp.*, 79 F.2d 836 (2d Cir.1935) (IMPERIAL, whiskey); *W.E. Bassett Co. v. Revlon, Inc.*, 354 F.2d 868 (2d Cir.1966) (TRIM, fingernail clippers). Were it not a registered trademark, PARENTS might be found to be an extremely weak descriptive mark.

■ In urging reversal of the finding that its mark was not entitled to protection against defendant's use of the title PARENT'S DIGEST, plaintiff emphasizes two points: (1) that the finding that its mark had achieved a "high degree of secondary meaning" made it a strong, not a weak, mark; and (2) that its uncontestable trademark registration status precludes defendant's using the fact that plaintiff's mark was merely descriptive as a defense in this infringement suit. In analyzing both these propositions, we note that a descriptive mark may attain secondary meaning in two ways: it may be proved as a matter of fact that the mark connotes a single source of origin to the public consumer or secondary meaning may be established through registration of a trademark.

■ Gruner + Jahr's mark was registered. The Lanham Act of 1946 provides that a mark registered by its owner shall be *prima facie* evidence of the registrant's exclusive right to use the mark in commerce on the product, without precluding an opposing party from proving any defense that might have been asserted had the mark not been registered. *See* 15 U.S.C. § 1115(a). A registered mark becomes incontestable if it has been in continuous use for five consecutive years subsequent to its registration and is still in use, *see* § 1065. If a mark became incontestable, its registration "shall be conclusive evidence . . . of the registrant's exclusive right to use the registered mark in commerce," subject to defenses not here relevant. § 1115(b).

What this means is that a defendant in an infringement suit—where plaintiff has an incontestable mark because of five years' registration—may not succeed in a defense that declares the mark is entitled to no protection because it is descriptive. As the Supreme Court instructs, the holder of a registered mark may enjoin its infringement relying on the mark's incontestability against a defense that the mark is merely descriptive. *See Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 194–202, 105 S.Ct. 658, 661–665, 83 L.Ed.2d 582 (1985); *Abercrombie & Fitch Co.*, 537 F.2d at 13–14. Hence, it must be concluded that for purposes of establishing its protectability in an infringement suit Gruner + Jahr's PARENTS is a strong mark entitled to be protected.

## B. *Likelihood of Confusion*

We turn now to the key element a plaintiff must prove under 15 U.S.C. § 1114(a) in order to succeed in a trademark infringement suit, that is, that there is a likelihood of confusion or, in other words, that numerous ordinary prudent purchasers are likely to be misled or confused as to the source of the product in question because of the entrance in the marketplace of defendant's mark. *See Western Pub. Co. v. Rose Art Industries, Inc.*, 910 F.2d 57, 59 (2d Cir.1990). For a finding of infringement a probability of confusion, not a mere possibility, must be found to exist. *See* McCarthy, *Trademarks* §§ 23:1[C], 23:2[B].

The factors ordinarily weighed in determining the likelihood of confusion are the familiar *Polaroid* factors, which include: 1) the strength of the plaintiff's mark; 2) the similarity of plaintiff's and defendant's marks; 3) the competitive proximity of the products; 4) the likelihood that plaintiff will "bridge the gap" and offer a product like defendant's; 5) actual confusion between products; 6) good faith on the defendant's part; 7) the quality of defendant's product; and 8) the sophistication of buyers. *Polaroid*, 287 F.2d at 495; *see also Lang v. Retirement Living Pub. Co.*, 949 F.2d 576, 580 (2d Cir.1991). The *Polaroid* factors are not dispositive, and

additional factors may be considered or initial factors abandoned. *See Polaroid*, 287 F.2d at 495. While the ultimate weighing of these factors is determined by the trial court as a matter of law subject to *de novo* review, resolution with respect to each separate factor is a factual finding, subject to the clearly erroneous standard. *See Bristol–Myers Squibb Co. v. McNeil–P.P.C., Inc.*, 973 F.2d 1033, 1043–44 (2d Cir.1992). We examine the district court's *Polaroid* findings in this light.

1. *Strength.* Plaintiff mischaracterizes the district court's findings with regard to the strength of the mark and incorrectly asserts it made inconsistent findings. Gruner + Jahr suggests the district court properly found that the registered trademark PARENTS had acquired strong secondary meaning as an incontestable mark and was therefore strong, but that it erred when it inconsistently concluded the mark was descriptive and therefore weak. To the contrary, the district court carefully and, in our view, properly distinguished between the strength of the trademark PARENTS and the weak, descriptive nature of what it called the "mere word 'parents'." Those findings are perfectly consistent.

First, Judge Knapp found that the mark PARENTS was strong since it was an incontestable registered trademark, having necessarily acquired secondary meaning. Thus, Gruner + Jahr's descriptive registered trademark was correctly found to be strong for purposes of protectability. At the same time, the trademark registration of the title PARENTS in its distinctive typeface did not confer an exclusive right to plaintiff on variations of the word "parent," such term being more generic than descriptive.

The district court therefore did not make inconsistent findings when it noted that the "mere word" parents could be considered weak. On other occasions, we have found that the strength of an incontestable registered trademark could be overcome by the use of a descriptive or weak portion of the mark. *See, e.g., W.W.W. Pharmaceutical Co. v. The Gillette Co.*, 984 F.2d 567 (2d Cir.1993) (incontestable registered trademark for "Sportstick" lip balm not infring-

ed by Gillette's "Sport Stick" deodorant); *Western Pub.*, 910 F.2d at 60 (noting that despite over 100 registered trademarks in "Little Golden Books" family, use of term "golden" alone might be descriptive); *cf. Pirone v. MacMillan, Inc.*, 894 F.2d 579 (2d Cir.1990) (observing in case of a proper noun that registration does not remove it from the general language or reduce it to exclusive possession of registrant for all purposes).

■ At the same time, we think it now established that the strength of a descriptive mark made incontestably distinctive for protectability purposes by registration for more than five years is a matter also properly considered by a trial court on the issue of likelihood of confusion. *See McGregor–Doniger Inc. v. Drizzle Inc.*, 599 F.2d 1126, 1132 (2d Cir.1979); *Dieter v. B & H Industries of Southwest Florida, Inc.*, 880 F.2d 322, 329 (11th Cir.1989), *cert. denied*, 498 U.S. 950, 111 S.Ct. 369, 112 L.Ed.2d 332 (1990). In analyzing the strength of the mark for likelihood of confusion purposes, we observe again that the actual trademark registration in this case protects not the name or the word "parents," but rather the stylized logo of that name including the unusual form and shape of the letters comprising the word. Any presumption of distinctiveness for likelihood of confusion purposes is lessened by the dissimilarity of the two magazine logos before us. The fact that the term "parents" resides in the public domain, *see Lang*, 949 F.2d at 581 (extensive third-party use of term "choice" weakens mark), lessens the possibility that a purchaser would be confused and think the mark came from a particular single source.

Further, registering the proper noun "Parents" as a trademark scarcely can be held to have removed it from being available for use by others, *cf. Pirone v. MacMillan, Inc.*, 894 F.2d 579, 583 (2d Cir. 1990), or grant exclusive possession of this property right to the trademark registrant. *See Societe Comptoir de L'Industrie Cotonniere Etablissements Boussac v. Alexander's Dep't Stores, Inc.*, 299 F.2d 33, 36 (2d Cir.1962). This view is given particular force by the Trademark Law Revision Act of 1988, Pub.L. No. 100–667 (1988), which

amended 15 U.S.C. § 1115(a) and (b) and made clear that incontestability does not relieve the trademark owner from the requirement of proving likelihood of confusion. *See The Trademark Law Revision Act of 1988*, Comment & § 1115(b) at 364 (U.S. Trademark Assoc.1989). Consequently, the finding by the district court that the "parents" portion of the mark—divorced from the stylized typeface and its particular placement on the magazine cover—was extremely weak was not clearly erroneous.

■ 2. *Similarity.* Defendant's mark was not sufficiently similar to Gruner + Jahr's mark to tip the scales towards the issuance of a preliminary injunction. In assessing similarity, courts look to the overall impression created by the logos and the context in which they are found and consider the totality of factors that could cause confusion among prospective purchasers. *See Lang*, 949 F.2d at 581; *Jim Beam Brands Co. v. Beamish & Crawford, Ltd.*, 937 F.2d 729, 735 (2d Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1169, 117 L.Ed.2d 415 (1992). The numerous factors here considered included the logos typeface, the fact that the only similarity concerned the use of the word "parent," the legend "Ladies' Home Journal" above PARENT'S DIGEST, and that Meredith's PARENTS took up about one-half the space on the magazine cover that Gruner + Jahr's PARENTS occupied. Given these dissimilar elements, the district court's finding that this factor did not support Gruner + Jahr was not clearly erroneous.

3. *Competitiveness.* The products were undoubtedly closely competitive. Both describe magazines whose intended use is to be read by parents. This factor weighed in plaintiff's favor. The parties agree that both products are high quality magazines on child-raising targeted to a specialized class of consumers. Although not identical, the district court correctly found that the products were competitive.

4. *"Bridging the Gap".* Gruner + Jahr expressed no intention to "bridge the gap" and enter the market occupied by Meredith's product, a quarterly compilation of previously published articles. Testimony demonstrated that plaintiff's and defendant's products differed in a number of

respects. The finding that Gruner + Jahr had no plan to "bridge the gap" and publish a magazine like PARENT'S DIGEST was appropriate.

5. *Actual Confusion.* The finding of no actual confusion of the products, even though plaintiff produced some testimony from its managers and employees as to inquiries about a possible relationship between the publications, is amply supported by the record. Gruner + Jahr incorrectly contends the district court erred in not applying what it characterizes as a rule that weight should be given to any evidence of actual confusion. *See Harold F. Ritchie, Inc. v. Chesebrough–Pond's, Inc.,* 281 F.2d 755, 761–62 (2d Cir.1960) (holding evidence of actual confusion shown through incorrect billings and mailings should not have been discarded by district court).

It was proper for the trial court to consider this testimony not as evidence of actual confusion, but rather as showing only queries into the possible relationship between the parties' publications. Meredith points out that no evidence appeared that even a single letter had been misdirected to Gruner + Jahr, a vastly different situation from that created when their competitor publication "Parenting" magazine appeared. "Parenting" eventually settled trademark infringement claims brought against it by Gruner + Jahr and now continues to be successfully published. Given that two issues of PARENT'S DIGEST had appeared and the only evidence presented to show actual confusion came from PARENTS employees, it was not error to rule this factor weighed in Meredith's favor. We are persuaded that at most the evidence showed a possibility and not the required probability of confusion.

6. *Good Faith.* There was good faith exhibited on Meredith's part. Although the district court wrongly concluded with regard to Meredith's decision to employ the "How They Grow" heading that it was the "decision of an underling"—a conclusion unsupported in the record—the other proof fails to show any evidence of bad faith sufficient to overturn the trial court's conclusion that Meredith acted in good faith. There is of course a scarcity of accurately descriptive synonyms for the word "parent." With the lack of available synonyms, particularly gender-neutral synonyms, the prevalence of large numbers of magazines that share similar titles to one another, and the fact that Ladies' Home Journal had for years included a parenting column, the use of the word "parent's" did not standing alone constitute bad faith. Although the trial court's finding with respect to the decision to adopt the "How They Grow" heading is dubious, we do not think—since the heading was voluntarily dropped after the first issue—the district court can be faulted by finding Meredith acted in good faith.

7. *Quality of Product.* The *Polaroid* factor of quality of product was not directly addressed, though Judge Knapp did remark that both magazines were high quality publications. Sufficient evidence demonstrates that PARENT'S DIGEST is a high quality product; the parties do not dispute this. Plaintiff insists this factor tilts in its favor because it means the products closely compete. Quality of product is distinct from competitiveness. Generally, quality is weighed as a factor when there is an allegation that a low quality product is taking unfair advantage of the public good will earned by a well-established high quality product. *See Essence Communications, Inc. v. Singh Indus.,* 703 F.Supp. 261, 270 (S.D.N.Y.1988). Such is not the case here. Hence, this factor is neutral.

8. *Sophistication of Buyers.* This final *Polaroid* factor also was not addressed directly by the district court. Despite Gruner + Jahr's suggestion that newsstand magazine buyers are subject to impulse buying and are therefore relatively unsophisticated, sufficient evidence exists in the record to support a finding that the buyers and advertisers both magazines seek are reasonably sophisticated consumers. This factor is neutral too.

▮ Of the above *Polaroid* factors, only competitiveness weighs in plaintiff's favor. Despite an argument that this factor should be weighed more heavily than the others, it does not standing alone in this case overcome the others. The *Polaroid* factors are not examined by any precise measure, but as earlier noted are

weighed only to ascertain whether there is a likelihood of confusion on the part of an appreciable segment of the purchasing public as to the source of the product. *See Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 872 (2d Cir. 1986). The trial court correctly concluded that PARENT'S DIGEST was not likely to cause an appreciable number of ordinarily prudent purchasers to be confused, as is required for a successful trademark infringement claim. The lack of confusion also disposed of plaintiffs' other claims for unfair competition and trade dress infringement.

## CONCLUSION

Accordingly, for the reasons stated the judgment appealed from is affirmed.