10-3154-cv
*Vincent's of Mott Street, Inc. v. Quadami, Inc.*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 24ᵗʰ day of May, two thousand eleven.

PRESENT: RICHARD C. WESLEY,
         GERARD E. LYNCH,
         DENNY CHIN,
                  *Circuit Judges.*

———————————————————————————

VINCENT'S OF MOTT STREET, INC., VINCENT GENEROSO,

                  *Plaintiffs-Counter-Defendants-Appellants*,

         -v.-                          10-3154-cv

QUADAMI, INC.,

                  *Defendant-Counter-Claimant-Appellee.*

———————————————————————————

FOR APPELLANTS:    RICHARD J. MAGID, Whiteford, Taylor &
                   Preston, LLP, Baltimore, MD (Steven
                   Edward Tiller, Whiteford, Taylor &
                   Preston, LLP, Baltimore, MD; Jean Marie
                   Graziano, Law Office of Jean Marie
                   Graziano, Brooklyn, NY, *on the brief*).

FOR APPELLEE:      CHARLES PALELLA, Kurzman Karelsen &
                   Frank, LLP, New York, NY.

Plaintiffs-Counter-Defendants-Appellants Vincent's of Mott Street, Inc. and Vincent Generoso (collectively "Appellants") appeal from a judgment entered October 7, 2009, in the United States District Court for the Eastern District of New York (Townes, *J.*), which granted summary judgment in favor of Defendant-Counter-Claimant-Appellee Quadami, Inc. ("Appellee"), dismissing all of Appellants' claims and ordering the cancellation of Appellants' registration of two service marks.

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district is **AFFIRMED.**

## BACKGROUND

Because we write for the parties, who are familiar with the facts and procedural history, we recount only those facts necessary for our decision.

In 1904, members of the Siano family opened the restaurant Vincent's Clam Bar at 119 Mott Street in Little Italy, New York (the "Mott Street Restaurant"). The Sianos owned and operated the Mott Street Restaurant until 1979, when they sold the restaurant, along with the use of the name "Vincent's Clam Bar" and the reputation and good will

associated with it, to Andrew DeLillo.[1]  Prior to 1985, DeLillo opened additional restaurants outside of Manhattan under the name Vincent's Clam Bar including a restaurant located in Carle Place, Long Island (the "Carle Place Restaurant").

In 1985, the Mott Street Restaurant filed for Chapter 11 bankruptcy.  In a bankruptcy sale, DeLillo sold the Mott Street Restaurant to a group of purchasers including Appellants.  The sale was governed by the terms of a bankruptcy court-approved stipulation (the "Stipulation") entered into by DeLillo and Appellants.  Three clauses of the Stipulation — the "Names Clause," the "Non-Affiliation Clause," and the "Ownership Clause" — are relevant to this appeal.  First, Appellants agreed that they "shall use and operate [the Mott Street Restaurant] under the names VINCENT'S CLAM BAR, VINCENT'S CLAM BAR OF MOTT AND HESTER STREETS, and/or MOTT AND HESTER RESTAURANT" (collectively "Vincent's Marks").  Second, Appellants agreed not to represent that they are affiliated or connected with any

[1] For purposes of this appeal, "Andrew DeLillo" or "DeLillo" refers to DeLillo both in his personal capacity and as principal of his corporate interests.  We also use "DeLillo" to refer to those corporate entities through which DeLillo engaged in the various transactions relevant to this appeal.

3

"other business" known by either the Vincent's Marks or "facsimiles thereof." Finally, Appellants agreed and acknowledged that Andrew DeLillo was the sole owner of the Vincent's Marks and that he retained the sole and exclusive right to use the marks. J.A. at 201–02.

Appellants state that they began using the name "The Original Vincent's Clam Bar" shortly after taking over the Mott Street Restaurant in 1985, with "Established 1904" and "From Little Italy" written next to the name in smaller print. By 1989, Appellants had dropped the reference to "clam bar" and had begun to identify the Mott Street Restaurant as "The Original Vincent's Established 1904" ("Original Vincent's Mark").

Appellee purchased the Carle Place Restaurant from DeLillo in 1983 and the rights to the "Vincent's Clam Bar" name from DeLillo in 1992. Through a purchase agreement and assignment of trademark, DeLillo sold to Appellee all rights, title, interests and claims in the "Vincent's Clam Bar" and "Vincent's Clam Bar of Mott and Hester Streets" names and "any all [sic] variations thereto and derivatives thereof," including "all trademarks, names, service marks" and the good will associated with the names. *Id*. at

4

358–59.[2]  Additionally, as DeLillo's successor-in-interest, Appellee became subject to the terms of the Stipulation.[3] At an unspecified point, but no later than February 1993, Appellee began using the name "The Original Vincent's Established 1904" at the Carle Place Restaurant.

On February 11, 1993, Appellee filed an application with the United States Patent and Trademark Office ("PTO") to register for restaurant services the marks THE ORIGINAL

---

[2] The Purchase Agreement contains the statement "[i]t is the intention of this Agreement that any and all rights transferred to Andrew DeLillo, Sr. pursuant to the terms of the 1979 Agreement be hereby transferred by him to the Transferee [Appellee] pursuant to the terms of this Agreement."  J.A. at 357.  Furthermore:

> Simultaneously and with the execution and delivery of this Agreement the [sellers/assignees] do hereby convey, sell, transfer, assign, set over and deliver to Transferee [Appellee], and its successor and assigns, all of their respective rights (including the right to sue for past infringement), title, interests and claims in, to, relating to or arising under (i) the names "Vincent's Clam Bar of Mott and Hester Streets," and any all [sic] variations thereto and derivatives thereof, together with all trademarks, tradenames, service marks, copyrights, registrations thereof and applications for registration therefor ("the Trademarks"), (ii) the good will associated therewith ("the Goodwill"), and (iii) the recipes for the sauce and the shrimpballs currently being served at Vincent's Clam Bar of Mott & Hester Streets, 119 Mott Street, New York, New York and Vincent's Clam Bar of Mott & Hester Streets, 187 Old Country Road, Carle Place, New York 11514 ("the Recipes"), for the purchase price set forth in Paragraph 2 hereof.

*Id.* at 358–59.

[3] "This stipulation will bind and inure to the heirs, assigns, representatives, successors in interest and/or lessees of the parties hereto."  J.A. at 206.

VINCENT'S ESTABLISHED 1904 and VINCENT'S CLAM BAR. Appellants opposed Appellee's application, and in 2002 the Trademark Trial and Appeal Board (the "Trademark Board" or "TTAB") denied Appellee's application.

On July 31, 2001, before the Trademark Board issued its decision, Appellant Generoso filed an application with the PTO to register the service marks THE ORIGINAL VINCENT'S ESTABLISHED 1904 and VINCENT'S SINCE 1904 for restaurant services. Generoso did not submit the Stipulation to the PTO, nor did he disclose the ongoing PTO litigation regarding Appellee's attempted registration of similar marks. The PTO granted Generoso's application on February 8, 2005.

Appellants allege that the Carle Place Restaurant now uses the name "The Original Vincent's Clam Bar Established 1904." Based on their registration of the Original Vincent's Mark, Appellants initiated the present action, raising, among other things, federal and state trademark-infringement claims. Both sides moved for summary judgment, which the district court granted to Appellee in full. The court also ordered the PTO to cancel the registration of Appellants' two service marks. On Appellants' motion for

reconsideration, the district court entered a July 6, 2010 order withdrawing a single footnote from its original memorandum and order. The court denied Appellants' motion in all other respects.

**DISCUSSION**

Appellants argue that the district court erred in (1) relying on the Stipulation, rather than trademark law, to determine their trademark infringement claims; (2) concluding that Appellee's use of "original" and "since 1904" was not false advertising; and (3) failing to separately analyze Appellants' common law unfair competition claim. We reject all of Appellants' arguments.[4]

**1.   Federal and State Trademark Infringement**

As is clear from its two opinions, the district court's core holding is that the Stipulation precludes Appellants from claiming ownership of the Original Vincent's Mark notwithstanding Appellants' registration of that mark. According to the district court, Appellants' federal and state trademark-infringement claims fail the first prong of

---

[4] We review the district court's grant of summary judgment *de novo*, "resolv[ing] all ambiguities and draw[ing] all permissible factual inferences in favor of the party against whom summary judgment is sought." *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003) (internal quotation marks omitted).

*Gruner + Jahr USA Publishing v. Meredith Corp.*, 991 F.2d 1072 (2d Cir. 1993).  In substance, we agree with that analysis.

Though federal registration of a mark is prima facie evidence of ownership, that evidence is rebuttable.  *See* 15 U.S.C. § 1115(a).  In particular, as is the case here, parties may allocate rights in a trademark through private agreement.  *Times Mirror Magazines, Inc. v. Field & Stream Licenses Co.*, 294 F.3d 383, 395 (2d Cir. 2002).  Provided the agreement does not violate public policy — and in this case there is no contention that it does — courts will give effect to agreements governing ownership and use of the mark without recourse to trademark law.  *See id.* at 395–96.  Thus, principles of contract interpretation govern the present dispute.[5]

Here, the Stipulation governs the rights of the parties with regard to the names used for their respective restaurants.  By its plain language, the Stipulation requires Appellants to use one of the three Vincent's Marks

---

[5] The district court determined and the parties agree that New York law governs interpretation of the Stipulation.  Without deciding the question, we accept this conclusion and interpret the Stipulation under New York law.  Accordingly, we apply familiar New York principles of contract interpretation.

8

and precludes Appellants from claiming affiliation with other restaurants using either any of the three Vincent's Marks or "facsimiles thereof." Furthermore, it provides that DeLillo or his successors-in-interest, here Appellee, solely own the Vincent's Marks. Thus, under the Stipulation, Appellee owns the Vincent's Marks, and Appellants have the unlicensed right (and obligation) to use them.

Over the years, however, both parties have slightly changed the names of their restaurants; Appellants' names no longer exactly reflect the three agreed-upon Vincent's Marks. Furthermore, though Appellants' name change (which occurred no later than 1989) appears to have breached the Stipulation, neither DeLillo nor Appellee ever sued for breach of contract. Nevertheless, we are persuaded that neither Appellants' change of name nor Appellee's failure to sue on the basis of that name change renders the Stipulation irrelevant. Appellants have only slightly modified their restaurant's name; the name "Vincent's" still predominates. Appellants admit that they added "Original" and "Established 1904" to their restaurant's name to strengthen consumer association of Appellants' restaurant with the Siano

9

family's restaurant. This is precisely the type of conduct that is covered by the Stipulation.

The Stipulation allows the parties to share the claim of lineage to the Sianos' restaurant, but Appellants' right is only one of unlicensed use, not ownership. Appellee is the sole owner of the Vincent's Marks. It would fundamentally change the relationship the Stipulation established between the parties if, through minor alteration, Appellants could claim ownership of a close variation of the Vincent's Marks.

Appellants' thorough discussion of the doctrine of tacking and its "continuing commercial impression" test fails to explain why trademark law should inform our interpretation of the Stipulation in the first instance. Indeed, we concur with the Trademark Board's observation that "here we are not dealing with a typical trademark situation, but one in which general trademark principles have been turned on their heads by the bankruptcy stipulation." J.A. at 1204 n.20 (TTAB Maj. Op.).[6] In this

---

[6] "As this court has frequently observed, Trademark Board decisions, while not binding on courts within this Circuit, are nevertheless to be accorded great weight under general principles of administrative law requiring deference to an agency's interpretation of the statutes it is charged with administering." *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 159 (2d Cir. 2007) (internal quotation marks omitted).

unusual circumstance, we see no problem with the district court's common-sense observation that, in the context of this case, both parties' name changes are sufficiently minor that their use remains governed by the Stipulation. We further note that this reading is consistent with both the majority and dissenting Trademark Board decisions. *See* J.A. at 1201, 1205 (TTAB Maj. Op.); *see also id.* at 1212 (TTAB Dis. Op.) ("[Appellants'] arguments . . . that they are somehow not bound by the language of the [Stipulation] . . . can be given no weight.").

Appellants' contention that the Stipulation is ambiguous is without merit. The Names Clause is consistent with the Non-Affiliation Clause. Under these two clauses, Appellants may use any of the Vincent's Marks (even if that use implies affiliation) but may not *otherwise* claim affiliation to other Vincent's restaurants.[7] The co-existence of these two clauses does not create ambiguity in the Stipulation; the district court had no reason to consult parol evidence.

---

[7] To the extent Appellants are concerned about the false impression of affiliation created by the use of one of the two Vincent's Marks that contain the name "Vincent's," Appellants are free to use the third option – "MOTT AND HESTER RESTAURANT" – which reduces the risk that Appellants' restaurant will be perceived as claiming affiliation with other Vincent's restaurants.

11

Despite Appellee's failure to sue for breach of contract, Appellants may not rely on the defenses of laches or statute of limitations to support the conclusion that the Stipulation no longer governs. The district court concluded only that the Stipulation precluded Appellants from claiming ownership of the Original Vincent's Mark, not that Appellee had a valid counterclaim for breach of contract.[8] Thus, these defenses are irrelevant to the infringement claims Appellants brought against Appellee.

In sum, the district court correctly held that Appellants failed to establish their trademark-infringement claims. The Stipulation rebuts the prima facie evidence, established through registration, that Appellants own the Original Vincent's Mark. Likewise, the Stipulation precludes Appellants from claiming ownership of the mark through priority of use. Without ownership of a protectable mark, Appellants cannot sustain their infringement claims.

In light of the above discussion, and for substantially the same reasons stated in the district court's September

---

[8] In holding that Appellants have no claim against Appellee for infringement, we should not be taken to imply that Appellee has any claim against Appellants, a question not before us. We do, however, note the TTAB's conclusion that the Original Vincent's Mark has "no owner." *See* J.A. at 1205 n.22; J.A. at 1208.

28, 2009 Memorandum and Order, we affirm the district court's decision to order the PTO to cancel Appellants' registrations for the service marks THE ORIGINAL VINCENT'S ESTABLISHED 1904 and VINCENT'S SINCE 1904.

**2.  False Advertising and False Designation of Origin**

We agree with the district court that Appellants' false advertising and false designation of origin claims under 15 U.S.C. § 1125(a) are without merit.  Through the 1992 purchase agreement and trademark assignment, Appellee acquired from DeLillo all of DeLillo's rights, title, and interests in the Vincent's Marks, including "any all [sic] variations thereto" and the "good will associated therewith."  DeLillo purchased these rights from members of the Siano family, and the Stipulation recognized DeLillo's sole ownership of these rights with respect to the Vincent's Marks.  Appellee acquired the right to leverage the good will that the Sianos established at the actual, original Vincent's Clam bar located in Little Italy.  Thus, Appellee may advertise that its restaurant hails from Little Italy and carries on the Siano family tradition without running afoul of the false designation of origin and false or misleading description of fact provisions of 15 U.S.C. §

13

1125(a).

**3.   Common Law Unfair Competition Claim**

Appellants contend that the district court erred in holding that, because they do not own the Original Vincent's Mark, Appellants' common law unfair competition claim must also fail.  Although the district court analyzed this claim on summary judgment, we decline to address the merits of this claim on appeal.  As Appellants' counsel correctly noted at oral argument, Appellants did not plead a common law unfair competition cause of action.

For the foregoing reasons, the judgment of the district court is hereby **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

14